

FILED _____   _____ RECEIVED
ENTERED _____   _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JUL 2 2 2008

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

CITY WEST ADVANTAGE, INC., a Nevada
corporation, also d/b/a as Unified Services;
and JAMES SLEMBOSKI, individually and
as an officer of, CITY WEST ADVANTAGE,
INC.,

        Defendants.

2:08-CV-00609-BES-GWF

## ORDER

Presently before the Court is Plaintiff Federal Trade Commission's ("FTC") Application for Preliminary Injunction (#2) filed on May 13, 2008. On June 6, 2008, the FTC filed its Supplemental Brief in Support of FTC's Application for Preliminary Injunction and Other Equitable Relief (#27). Defendants City West Advantage, Inc. and James Slemboski (collectively "City West Defendants") did not file a supplemental brief in anticipation of the hearing on the preliminary injunction. Instead, they appear to rely on their Opposition to Application for Temporary Restraining Order, Asset Freeze, Order to Show Cause, and Other Equitable Relief (#16) filed on May 15, 2008.

## I. BACKGROUND

This case arises out of an allegedly unlawful telemarketing scheme. The matter first came before the Court on the FTC's Application for Temporary Restraining Order (#4). On

1

May 21, 2008, the Court denied the application. (Order (#19) 9.)  Thereafter, the Court set a hearing on the FTC's request for a preliminary injunction. (Minute Order (#20).)  On June 12, 2008, the hearing was held and the matter was taken under submission.  Because the factual allegations are well-known to the parties, the Court will not recount them here. Instead, the Court adopts the factual recitation of its May 21st order denying the temporary restraining order.  (Order (#19) 1-3.)

It bears noting, though, that the FTC has significantly narrowed the scope of the relief it seeks with respect to the preliminary injunction.  Originally, in its request for a temporary restraining order, the FTC requested not only a prohibition on deceptive claims, but also an asset freeze, immediate access to City West Defendants' business records and premises, an accounting, immediate production of documents, and expedited discovery. (App. for Temp. Rest. Order (#4) 1.)  Following the Court's denial of its application, the FTC abandoned its broad request and now seeks an order that would:

> 1. restrain Defendants from making material misrepresentations in connection with the advertising, promotion, offering or sale of goods or services by telephone or otherwise in commerce;
> 2. restrain Defendants from causing billing information to be submitted without the express informed consent of the customer;
> 3. restrain Defendants from violating the Telemarketing Sales Rule, including the specific Sections alleged in the Complaint;
> 4. require Defendants to distribute a copy of the order restraining Defendants from the above actions to its sales agents, including telemarketing sales rooms;
> 5. require Defendants to preserve financial and business records;
> 6. require Defendants to notify the FTC before opening or acquiring new businesses; and
> 7. provide such other ancillary equitable relief as the Court deems just and proper. (Notice of Withdrawal (#23) 2.)

## II. LEGAL STANDARD

The FTC has made its application for a temporary restraining order under 15 U.S.C. § 53(b) (otherwise known as Section 13(b) of the FTC Act) and 15 U.S.C. § 57b (otherwise known as Section 19(b)).  15 U.S.C. § 53(b) provides the Court with authority to grant injunctive relief against violations of any provision of law the FTC is charged with enforcing.

2

1    15 U.S.C. § 53(b).[1]  Similarly, 15 U.S.C. § 57b provides the Court authority to grant the

2    necessary relief in cases of violations of a trade regulation rule such as the Telemarketing

3    Sales Rule ("TSR").  15 U.S.C. § 57b.[2]

4           Unlike the traditional equity standard, which requires a litigant to show irreparable

5    harm before a preliminary injunction issues, Section 13(b) provides that a federal district

6    court may grant a temporary restraining order after (1) considering the likelihood that the

7    Commission will succeed on the merits and (2) balancing the equities.  FTC v. Affordable

8    Media, 179 F.3d 1228, 1233 (9th Cir. 1999) (citing 15 U.S.C. § 53(b)).  "'Because

9    irreparable injury must be presumed in a statutory enforcement action, the district court

10   need only to find some chance of probable success on the merits.'" FTC v. World Wide

11   Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989) (quoting United States v. Odessa, 833

12   F.2d 172, 175 (9th Cir. 1987)).

---

[1] 15 U.S.C. § 53(b) states in pertinent part, "[I]n proper cases, the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b).  The Ninth Circuit has held that this provision also grants the district courts authority to issue "whatever preliminary injunctions are justified by the usual equitable standards and are sought in accordance with Rule 65(a)."  FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1111 (9th Cir. 1982) (citation omitted).

[2] 15 U.S.C. § 57b provides in pertinent part:

(a)(1) If any person, partnership, or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices . . . then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) of this section in a United States district court or in any court of competent jurisdiction of a State. . . .

(b) . . . The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be.  Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respect the rule violation of the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

3

1

### III. DISCUSSION

2 **A. Likelihood of Success**

3     **1. Counts One, Two, and Three**

4     In counts one, two, and three, the FTC alleges that City West Defendants have

5 violated Section 5 of the FTC Act. (Compl. (#1) ¶¶ 26-39.) Section 5 prohibits "[u]nfair

6 methods of competition in or affecting commerce, and unfair or deceptive acts or practices

7 in or affecting commerce." 15 U.S.C. § 45(a)(1). An act is deceptive if it involves a

8 material representation, omission, or practice that is likely to mislead consumers acting

9 reasonably under the circumstances. FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir.

10 1994), cert denied, 514 U.S. 1083 (1995). A misrepresentation is material if it involves

11 facts on which a reasonably prudent person would rely. FTC v. Kitco of Nevada, Inc., 612

12 F. Supp. 1282, 1292 (D.C. Minn 1985), cited with approval by FTC v. Figgie Intern., Inc.,

13 994 F.2d 595, 605-06 (9th Cir. 1993). "A presumption of actual reliance arises once the

14 Commission has proved that the defendant made material misrepresentations, that they

15 were widely disseminated, and that consumers purchased the defendant's product."

16 Figgie, 994 F.2d at 605-06 (citations omitted).

17     Violations of the TSR constitute unfair or deceptive practices under Section 5(a). 15

18 U.S.C. § 57a(d)(3). The TSR prohibits telemarketers from "misrepresenting, directly or by

19 implication, . . . (i) [t]he total costs to purchase, receive, or use, and the quantity of, any

20 goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(i). It

21 further prohibits the misrepresentation of "[a]ny material aspect of the nature or terms of

22 the seller's refund, cancellation, exchange, or repurchase policies." 16 C.F.R. §

23 310.3(a)(2)(iv).

24     As to counts one, two, and three, the Court finds that the FTC has established the

25 elements necessary to support a preliminary injunction. First, there is evidence that City

26 West Defendants employed deceptive "door openers." "The Federal Trade Act is violated

27 if [a seller] induces the first contact through deception, even if the buyer later becomes fully

28 informed before entering the contract." Resort Car Rental System, Inc. v. FTC, 518 F.2d

4

962, 964 (9th Cir. 1975) (citing Exposition Press, Inc. v. FTC, 295 F.2d 869 (2d Cir. 1961),
cert. denied, 370 U.S. 917).

Here, several consumers submitted declarations in which they state that they were
informed by City West Defendants at the outset of telemarketing calls that they had won a
$1,000 online shopping spree, only after which they were offered promotional items for trial
and purchase—namely, internet service, long-distance phone service, and dietary
supplements. (Arambel Decl. ¶ 2); (Benn Decl. ¶ 2); (Estrada Decl. ¶ 2); (Pascual Decl. ¶
2); (Rayner Decl. ¶ 2.) Thus, City West Defendants appear to have used the prospect of a
free gift to entice consumers to entertain further offers.

That alone may not amount to a violation of the Act. However, here, it is not
disputed that the certificates for the online shopping spree are redeemable at only one
online retailer. Moreover, some of these same consumers state that upon visiting the
online retailer, they found that the shipping and handling fees associated with each item
were not covered by the gift certificate, but instead were to be paid by the consumer.
(Estrada Decl. ¶¶ 4-5); (Pascual ¶ 4.) Furthermore, the shipping and handling fees were,
according to these consumers, exorbitant, coming to no less than $14.95 per item.
(Estrada Decl. ¶ 5); see also (Pascual ¶ 4.) These consumers have stated that the
shipping and handling fees associated with any redemption of the gift certificate far exceed
the value of the items that might be obtained. (Estrada Decl. ¶ 5); (Pascual ¶ 4.) Thus, the
offer of a "free" internet shopping spree could be construed as being misleading and
deceptive.

Similarly, some consumers were informed by City West Defendants that they had
won a free vacation. (Arambel Decl. ¶ 2); (Haynes ¶ 5); (Watson Decl. ¶ 2); (Williams ¶ 2.)
However, these consumers have stated that they received nothing of the kind. For
example, both Stephanie Watson and Tanya Williams were told they had won a free
vacation package but never received anything. (Watson Decl. ¶¶ 2, 6); (Williams Decl. ¶¶
2, 6.) In light of the consumer declarants' statements as to the representations made
about the purportedly free gifts, the Court concludes that there is significant evidence that

5

1   City West Defendants employed deceptive door openers in order to induce consumers to
2   stay on the line while they, City West Defendants, proposed further purchases.

3       There is also evidence that City West Defendants employed telemarketing
4   techniques designed to leave the net impression that consumers were receiving only a free
5   gift at a modest shipping charge, and not incurring any financial obligations as to the
6   promotional items being pitched, when in fact consumers were doing just that. "A
7   solicitation may be likely to mislead by virtue of the net impression it creates even though
8   the solicitation also contains truthful disclosures." FTC v. Cyberspace.com, LLC, 453 F.3d
9   1196, 1200 (9th Cir. 2006).

10      At the hearing on this matter, the Court heard testimony from Logan Arambel.
11  Arambel testified that he was contacted telephonically by City West Defendants and
12  offered a $1,000 internet shopping spree. He also testified that he was told that he would
13  only have to pay $1.95 in shipping in order to receive the shopping spree certificate.
14  Arambel said he was told that in order to complete the transaction he would have to
15  answer "yes" to a series of questions posed to him. The questions were part of a
16  telephonic verification session in which Arambel was offered three promotional services
17  which he was assured could be cancelled within ten days with no charge. Arambel
18  answered "yes" to the questions. However, Arambel claimed that he only did so because
19  during an unrecorded portion of the call he was told by the telemarketer that although he
20  was required to answer "yes," thereby accepting the three promotional products, he would
21  not receive those products so long as after the verification he informed the telemarketer
22  that he did not want to accept them. In other words, Arambel was told he was incurring no
23  obligations as to the promotional products by answering the questions posed affirmatively.

24      Arambel's testimony suggests that the net impression of the call was misleading. It
25  suggests that it was Arambel's impression that he would not be charged anything other
26  than $1.95 for the shipping of the shopping spree certificate, and that he would incur no
27  obligations as to the promotional products offered. However, in reality he had apparently
28  agreed to accept additional promotional items under the guise that he was not actually

1  accepting those items, resulting in surprise charges in excess of $100 when he did not

2  cancel them.  Insofar as Arambel's statement is an accurate reflection of what actually

3  occurred, his testimony suggests that the telemarketers misleading comments caused

4  Arambel to have the net impression that he would incur no obligations as a result of

5  participating in the recorded verification.  The telemarketer's actions in this instance could

6  only be characterized as deceptive and misleading.

7       Arambel's testimony is consistent with the statements of other consumer declarants

8  who, despite having participated in the verification process, were left with the impression

9  that they had no obligations as to the promotional items offered in connection with the free

10 gift.  For example, Maria Pascual states in her declaration that after she was contacted by

11 City West Defendants and offered a free $1,000 internet shopping spree, she specifically

12 stated that she would accept the gift certificate and pay the $1.95 shipping charge only if

13 she would not be obligated to purchase any promotional items.  (Pascual Decl. ¶ 2.)

14 According to Pascual, she was given such assurances by the caller, but later received the

15 promotional items and was charged for them anyway.  Id. ¶¶ 2-5.

16      Similarly, Osvaldo Estrada was contacted by City West Defendants.  (Estrada Decl.

17 ¶ 2.)  Estrada states that he was offered a $1,000 shopping spree as well as the

18 promotional products.  Id. ¶ 3.  He says that he accepted the shopping spree, but told the

19 telemarketer that he did not want the promotional products.  Id.  According to Estrada, the

20 telemarketer continued to solicit his acceptance of the promotional products, which he

21 refused.  Id.  Ultimately, Estrada says he was assured by the telemarketer that he would

22 not be sent any promotional products.  Id.  Several days later, Estrada received a package

23 containing a gift certificate for the online shopping spree and the promotional products.  Id.

24 ¶ 4.  He was later charged for those products.  Id. ¶ 6.

25      Tanya Williams states in her declaration that she too was contacted by City West

26 Defendants.  (Williams Decl. ¶ 2.)  She was offered a free three day and two night

27 vacation.  Id.  Like the other declarants, Williams was also offered the promotional

28 products.  Id.  Williams informed the telemarketer that she had no need for the products

and, according to her, was assured that no charges other than $1.95 in shipping for the
vacation voucher would be made without her approval. Id. Later, Williams received a call
from her bank notifying her that an electronic check made out to City West Defendants in
the amount of $149.50 had cleared, resulting in her account being overdrawn. Id. ¶ 5.

Taken together, the statements of Pascual, Estrada, and Williams, like those of
Arambel, suggest that despite the fact that a verification process was employed, ostensibly
for purposes of informing them that they were incurring obligations as to the promotional
items, they were expressly assured that no charges would result from the call other than
the nominal shipping and handling fee associated with the free gift. Thus, the disclosures
made during the verification process may have been insufficient given the unrecorded
representations of the telemarketers as to the nature of the transaction, which could be
construed as misleading and deceptive. In light of the foregoing, the Court concludes that
the FTC has met its preliminary injunction burden as to likelihood of success on Counts
one, two, and three of its complaint.

**2. Count Four**

In count four of its complaint, the FTC alleges that City West Defendants caused
billing information to be submitted for payment without express informed consent, in
violation of 16 C.F.R. § 310.4(a)(6). (Compl. (#1) ¶¶ 40-41.) That section prohibits
"[c]ausing billing information to be submitted for payment, directly or indirectly, without the
express informed consent of the customer or donor." 16 C.F.R. § 310.4(a)(6).

The testimony of Arambel, as well as that of other consumer declarants identified
above, as to the assurances made by City West Defendants' telemarketers that no
additional charges would be incurred beyond the shipping charge associated with the free
gift suggests that consumers may not have been fully informed when authorizing debits
from their checking accounts. To the extent misleading statements were made as to the
obligations arising as a result of consumers' participation in the recorded verification
session, any charges authorized as a result of that participation could not fairly be
considered informed. Thus, the FTC has a likelihood of success as to Count four.

8

### 3. Counts Five and Six

In counts five and six of its complaint, the FTC asserts that City West Defendants contacted consumers who had previously declined to purchase services with the intent to annoy or harass, in violation of 16 C.F.R. § 310.4(b)(1)(i). (Compl. (#1) ¶¶ 42-43.) The FTC further alleges that City West Defendants have contacted consumers who have expressly informed City West Defendants that they do not want to be contacted in the future, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(A). (Compl. (#1) ¶¶ 44-45.)

16 C.F.R. § 310.4(b)(1)(i) states that "[c]ausing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is an abusive telemarketing act. Id. Similarly, 16 C.F.R. § 310.4(b)(1)(iii)(A) prohibits the initiation of an outbound call to a person who has previously indicated that he or she does not wish to receive calls made by or on behalf of the seller whose goods or services are being offered. Id.

As to these claims, the FTC has satisfied its burden. Arambel testified that he was contacted by City West Defendants after informing them that he was not interested in the offer. This statement is consistent with his declaration. (Arambel Decl. ¶ 3.) Christopher Reeb states in his declaration that he was contacted repeatedly by City West Defendants after he lost his cell phone signal during the initial call. (Reeb Decl. ¶ 5.) He states in his declaration that the caller's tone was "aggressive," and that the caller demanded that he complete the verification process he had begun earlier or he would be charged a $500 fee. Id. Similarly, Glenn Ellis declares that he was contacted by City West Defendants after he hung up before completing the verification process during the initial call. (Ellis Decl. ¶ 3.) During two subsequent calls, the telemarketer threatened to charge Ellis's bank account in the amount of $250 if he did not complete the process. Id. ¶¶ 4-5. Michael Howard also states that he was called repeatedly after refusing to complete the verification process and threatened with a $500 fine. (Howard Decl. ¶¶ 3-5.)

Lori Hemmelgarn states in her declaration that she was contacted despite being on the National Do Not Call Registry. (Hemmelgarn Decl. ¶ 2.) Hemmelgarn claims she was

9

1  told she had won a $500 prize, and that she need only supply her bank account

2  information to redeem the prize. Id. When she refused, the caller yelled obscenities at

3  her. Id. The same caller then called her back the next day. Id. ¶ 3. Again, she refused to

4  give out her bank information, and again the caller yelled obscenities. Id. The same caller

5  apparently called a third time, and again yelled obscenities. Id. ¶ 5. Kaye Stotler had a

6  similar experience, declaring that she was contacted between fifteen and twenty times by

7  City West Defendants over a period of several days. (Stotler Decl. ¶ 5.) During these

8  calls, Stotler says she was harassed by the telemarketer in an attempt to get her bank

9  account information. Id. ¶¶ 2-5. Together, the statements of these declarants suggest a

10  likelihood of success on the FTC's fifth and sixth claims for relief.

11  **B. Balancing the Equities**

12  Turning now to balancing the equities, the Court concludes that a preliminary

13  injunction is appropriate here. There is significant evidence that City West Defendants

14  have employed misleading practices designed to deceive consumers into authorizing

15  charges for the purchase of products they do not want. Moreover, the consistent

16  statements of the consumer declarants suggest that these practices may be part of a

17  widespread pattern that may have already, and could in the future, harm a large number of

18  consumers. As such, the Court finds that the public equities weigh in favor of an injunction.

19  As to the private equities, there is no strong interest in not granting the preliminary

20  relief sought here. There is no hardship to City West Defendants in requiring them merely

21  to follow the law–to refrain from making misrepresentations to consumers they contact.

22  See World Wide Factors, 882 F.2d at 347 (affirming the district court's consideration of

23  private equities where the district court held that "there is no oppressive hardship to

24  defendants in requiring them to comply with the FTC Act, refrain from fraudulent

25  representation or preserve their assets from dissipation or concealment."). Therefore, the

26  Court grants the FTC's application for a preliminary injunction.

27  IV. CONCLUSION

28  Accordingly, IT IS ORDERED that the FTC's Application for Preliminary Injunction (#2)

10

1    is GRANTED.

2          IT IS FURTHER ORDERED that, in connection with the advertising, promotion, offering

3    or sale of goods or services by telephone or otherwise in commerce, Defendants, as well as

4    their successors, assigns, officers, agents, directors, servants, employees, salespersons,

5    independent contractors, attorneys, corporations, subsidiaries, affiliates, all other persons or

6    entities directly or indirectly under their control or under common control with any of them, and

7    all other persons or entities in active concert or participation with any of them who receive

8    actual notice of this Order by personal service or otherwise, whether acting directly or through

9    any corporation, subsidiary, division, or other device, including, but not limited to, fictitious

10   business names, and each such person, in connection with the advertising, promotion, offering

11   or sale of goods or services by telephone or otherwise in commerce, are hereby restrained

12   and enjoined from making any express or implied representation or omission of material fact

13   that is false or misleading, in any manner, orally or in writing, to any consumer or person,

14   including, but not limited to, any misrepresentation that:

15         A. Defendants will charge a consumer or person only a nominal fee for shipping and

16   handling, such as $1.95, and the consumer or person will not be charged any other amount;

17   and

18         IT IS FURTHER ORDERED that in connection with the advertising, promotion, offering

19   or sale of goods or services by telephone or otherwise in commerce, Defendants are hereby

20   restrained and enjoined from causing billing information to be submitted for payment, directly

21   or indirectly, without the express informed consent of the customer.  For purposes of this

22   Section, "express informed consent" means:

23         A. Defendants obtain from the customer th entire account number to be charged;

24         B. Defendants obtain from the customer his or her express agreement to be charged

25   for the goods or services and to be charged using the account number provided by the

26   customer;

27         C. Defendants make and maintain an audio recording of the entire telemarketing

28   transaction; and

11

D. The telemarketing transaction did not involve any deceptive or abusive telemarketing practices, as defined in the TSR.

IT IS FURTHER ORDERED that in connection with the advertising, promotion, offering or sale of goods or services by telephone or otherwise in commerce, Defendants are hereby restrained and enjoined from violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including but not limited to:

A. Section 310.3(a)(2)(iv), which prohibits misrepresenting any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

B. Section 310.3(a)(2)(i), which prohibits misrepresenting the total cost to purchase, receive, or use any goods or services that are the subject of a sales offer;

C. Section 310.4(a)(6), which prohibits causing billing information to be submitted for payment without the express informed consent of the customer;

D. Section 310.4(b)(1)(i), which prohibits telemarketers from engaging in, or sellers from causing a telemarketer to engage in, causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; or

E. Section 310.4(b)(1)(iii)(A), which prohibits telemarketers from engaging in, or sellers from causing a telemarketer to engage in certain conduct, including, *inter alia*, initiating any outbound telephone call to a person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.

IT IS FURTHER ORDERED that the Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, spouse and representative of the Defendants, and shall, within five calendar days from the day of entry of this Order, provide the Commission with a sworn statement that the Defendants have complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of the Order.

The persons to whom Defendants are required under this Section to provide a copy of this Order specifically include, but are not limited to, Kyle B. Wood (an officer or director of Defendant City West Advantage, Inc.) and each telemarketing call center that has been used by any of the Defendants to make telemarketing calls.

IT IS FURTHER ORDERED that Defendants, and their officers, directors, agents, employees, salespersons, independent contractors, attorneys, all other persons or entities directly or indirectly under their control or under common control with any of them, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of any Defendant, including, but not limited to, any contracts, accounting data, correspondence, advertisements, computer tapes, discs or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns.

The persons subject to this Section specifically include but are not limited to Kyle B. Wood (an officer or director of Defendant City West Advantage, Inc.) and each telemarketing call center that has been used by any of the Defendants. The records subject to this Section specifically include but are not limited to scripts, telephone logs, recordings of telemarketing calls, and organizational charts.

IT IS FURTHER ORDERED that:

A. Defendants are hereby restrained and enjoined from creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing Plaintiff Commission with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers,

13

1  directors, principals, managers and employees; and (4) a detailed description of the business
2  entity's intended activities; and

3       B. Defendant Slemboski shall notify the Commission in writing at least seven (7) days
4  prior to any affiliation with any new or previously inactive business or employment.  Each
5  notice shall include Defendant Slemboski's new business address and a statement of the
6  nature of the new business or employment and of his duties and responsibilities in connection
7  with that business or employment.

8       IT IS FURTHER ORDERED that, for the purposes of this Order, all correspondence and
9  service of pleadings on Plaintiff shall be addressed to:

10      Kenneth H. Abbe
     Eric D. Edmondson
11      Federal Trade Commission
     901 Market St., Ste. 570
12      San Francisco, CA 94103

13  Documents served by fax shall be sent to Kenneth H. Abbe/Eric D. Edmondson at (415) 848-
14  5184.

15       IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all
16  purposes.

17       IT IS FURTHER ORDERED that for purposes of this order, the following terms are
18  defined as:

19       1. "Customer," "seller," "telemarketer," and "telemarketing" are defined as in Section
20  310.2 of the TSR, 16 C.F.R. § 310.2.

21       2. "Defendants" means City West Advantage, Inc., a Nevada corporation (also doing
22  business as "Unified Services"), and James Slemboski, and each of them, by whatever names
23  each might be known.  Pursuant to the provisions of Fed. R. Civ. P. 65(d), the provisions of
24  this Order shall be binding upon the Defendants and upon their officers, agents, directors,
25  employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates,
26  successors, assigns and all other persons or entities in active concert or participation with
27  them who receive actual notice of this Order by personal service or otherwise, whether acting
28  directly or through any trust, corporation, subsidiary, division or other device.

14

3. "Document" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained. A draft of non-identical copy is a separate document within the meaning of the term.

4. "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

5. "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, sole proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

6. "Plaintiff" means the Federal Trade Commission.

7. The terms "and" and "or" have both conjunctive and disjunctive meanings.

DATED: This 22nd day of July, 2008.


UNITED STATES DISTRICT JUDGE

15